IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 3: 19 CR 4 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | |
| | ) | |
| ELIZABETH R. LECRON, | ) | BRIEF IN OPPOSITION TO MOTIONS |
| VINCENT S. ARMSTRONG, | ) | TO DISMISS COUNTS TWO, THREE, |
| | ) | FOUR AND FIVE |
| Defendants. | | |

Now comes the United States of America, by and through Justin E. Herdman, United

States Attorney, and Michelle M. Baeppler, Assistant United States Attorney, and opposes

Defendants' Motions to Dismiss Counts Two, Three, Four, and Five of the Indictment in this

case.  The reasons for the government's opposition are more fully set forth in the memorandum

attached hereto and incorporated herein.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:  /s/ Michelle M. Baeppler
Michelle M. Baeppler (OH: 0065378)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3995
(216) 685-2378 (facsimile)
Michelle.Baeppler@usdoj.gov

<u>MEMORANDUM</u>

I.   <u>BACKGROUND</u>

 A.   <u>FACTUAL BACKGROUND</u>

 Elizabeth Lecron and Vincent Armstrong met in February 2018 and started dating shortly thereafter.  Lecron moved in with Armstrong in May 2018 at a residence in Toledo, Ohio.  Both Lecron and Armstrong became immersed in the "True Crime Community ("TCC")" on the social media platform Tumblr.

 Despite its name, a segment of this TCC group fixated exclusively on mass murder and lionized those who committed such murders.  Lecron and Armstrong routinely posted images and videos glorifying the Columbine shooters,[1] Dylann Roof,[2] and Adam Lanza.[3]  They also wrote in personal journals about their suicidal and homicidal ideations.

 In the summer of 2018, the FBI received information that Lecron and Armstrong were planning a violent attack and had purchased some of the elements for a pipe bomb.  Armstrong started wearing only black shirts and camouflage pants, and he and Lecron frequented a local shooting range to practice using their firearms.

---

[1] The Columbine High School shooting occurred on April 20, 1999.  Students Eric Harris and Dylan Klebold murdered 12 students and one teacher.  Numerous others were injured.  In addition to firearms, the attack also included the use of homemade explosive devices.  Harris and Klebold committed suicide.

[2] Dylann Roof committed a mass shooting at a primarily African-American church in Charleston, South Carolina on June 17, 2015.  He killed nine people.  He was later apprehended by law enforcement.  He confessed that he hoped to ignite a race war.  Roof was eventually convicted in federal court of numerous crimes and was sentenced to death.

[3] Adam Lanza committed a mass shooting at Sandy Hook Elementary School in Newtown, Connecticut on December 14, 2012.  He shot and killed 20 young children and six staff members.  He also killed his mother at their home.  He committed suicide.

Lecron and Armstrong's plan to commit a mass murder morphed over several months. First, they agreed to use a pipe bomb before deciding on a specific target.  They printed out bomb-making instructions and purchased end caps, screws, and a drill to make the bomb.  This pipe-bomb plan then evolved into committing a mass murder at a local bar in Toledo.  The use of a pipe bomb, in conjunction with firearms, melded together to create a recipe that Lecron and Armstrong hoped would yield maximum human carnage.  Despite the evolution of the plan, one thing remained constant:  Lecron and Armstrong's desire to cause mass casualties.

While Lecron and Armstrong were planning to use a pipe bomb and firearms at a local Toledo bar, Lecron was also assisting in another plot – she agreed to buy and did buy explosives for an attack that she believed was going to occur on a pipeline in Georgia.  Lecron purchased explosive powder at a Toledo area shop.

B.    SUMMARY OF CHARGES IN THE INDICTMENT

On January 3, 2019, a federal grand jury charged Lecron and Armstrong with multiple crimes relating to these schemes.  (R. 9: Indictment).  Count 1 charges them with a conspiracy in violation of 18 U.S.C. § 844(n).  The conspiracy alleges that Lecron and Armstrong (a) conspired to transport or receive an explosive with the knowledge and intent that it would be used to kill, injure, or intimate any individual, in violation of 18 U.S.C. § 844(d); and (b) conspired to maliciously damage or destroy property by fire or explosive, in violation of 18 U.S.C. §844(i).

Counts 2 and 3 charge them with conspiracy to use and carry destructive devices (Count 2) and firearms (Count 3) during in relation to a crime of violence as set forth in 18 U.S.C. § 924(c), both in violation of 18 U.S.C. § 924(o).  The underlying crimes of violence alleged are transporting or receiving an explosive with the knowledge and intent that it would be used to kill,

injure, or intimate any individual, in violation of 18 U.S.C. § 844(d), and maliciously damaging or destroying property by fire or explosive, in violation of 18 U.S.C. § 844(i).

Count 4 charges Lecron with possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c).  The underlying crime of violence alleged is conspiracy to transport or receive an explosive with intent to kill, injure, or intimidate any individual, and conspiracy to maliciously damage or destroy property by fire or explosive, in violation of 18 U.S.C. § 844(n).  Count 5 charges Armstrong with possessing a firearm in furtherance of this same crime of violence.

Count 6 charges Armstrong with making false statements to FBI agents, in violation of 18 U.S.C. § 1001(a)(2).

Count 7 charges Lecron with purchasing black powder in an effort to bomb a pipeline in the State of Georgia, in violation of 18 U.S.C. § 844(d).

## II.    LAW AND ARGUMENT

### A.    COUNTS TWO, THREE, FOUR, AND FIVE OF THE INDICTMENT SUFFICIENTLY ALLEGE CRIMES.

An indictment must include "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  An indictment is sufficient if it contains the elements of the offense, provides sufficient notice to defend against the charges, and enables the defendant to raise a double jeopardy defense to a future prosecution.  *Hamling v. United States*, 418 U.S. 87, 117 (1974).  "An indictment will usually be sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense."  *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992).  An indictment is to be liberally construed in favor of its sufficiency.  *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).

A typical Section 924(c) indictment charges that the defendant used or carried a firearm during and in relation to a "crime of violence" and then identifies that predicate crime.  In that context, an indictment that identifies the predicate offense and alleges that the predicate is a "crime of violence" is sufficient to satisfy the *Hamling* standard.  A further definition of the term "crime of violence" is not required.  *See generally*, *e.g.*, *United States v. McGarity*, 669 F.3d 1218, 1235-38 (11th Cir.) (upholding indictment charging violation of 18 U.S.C. § 2252A), *cert. denied*, 568 U.S. 921 (2012); *Cf. Hamling*, 418 U.S. at 118-19 (indictment not required to define the "legal term of art" "obscene").

Counts 2 and 3 of the indictment are sufficient.  They charge Lecron and Armstrong with conspiring to violate Section 924(c), which is a violation of 18 U.S.C. § 924(o).  Specifically, those counts allege that Defendants conspired to use and carry destructive devices (Count 2) and firearms (Count 3) during in relation to crimes of violence.  The underlying crimes of violence

alleged are transporting or receiving an explosive with the knowledge and intent that it would be used to kill, injure, or intimate any individual, in violation of 18 U.S.C. § 844(d), and maliciously damaging or destroying property by fire or explosive, in violation of 18 U.S.C. § 844(i). Each count follows the language of the underlying statute, contains the elements of the offense, provides sufficient notice to defend against the charges, and would enable Lecron and Armstrong to raise a double jeopardy defense if they were later prosecuted. As such, Counts 2 and 3 are facially valid. *See Hamling*, 418 U.S. at 117.

In their Motions to Dismiss, Defendants advance the argument that Counts 2 and 3 of the Indictment are deficient insofar as "§ 922(o) [sic] relies on § 924(c)'s definition of a crime of violence, [and] a conspiracy is also not a crime of violence for § 922(o) [sic] purposes." (R.27: Defendant Lecron Motion to Dismiss, PageID 175; R.34: Defendant Armstrong Motion to Dismiss, PageID 192.) Defendants misread Counts 2 and 3 of the Indictment. Counts 2 and 3 allege first that the Defendants conspired to commit a substantive crime, *i.e.*, a Section 924(c) offense, and second, that substantive offenses, *i.e.*, Section 844(d) and Section 844(i) offenses, not conspiracies, were the underlying crimes of violence. Therefore, regardless of whether a conspiracy can constitute a crime of violence, factually, there is no merit to Defendants' argument.

Defendants also claim Counts 2 and 3 are defective because the grand jury did not also separately charge the Defendants with the underlying substantive offenses. They have cited no authority which shows that those charges are required. In fact, it is not required. To sustain a Section 924(c) conviction, it is unnecessary that the defendant be convicted of, or even charged with, the underlying predicate offense. *See, e.g., United States v. Randall*, 171 F.3d 195, 205 (4th Cir. 1999); *United States v. Crump*, 120 F.3d 462, 466 (4th Cir. 1997) (collecting cases);

6

*United States v. Anderson*, 39 F.3d 331, 355 (D.C. Cir. 1994).  Indeed, even an acquittal on the predicate offense, when charged as a separate count, does not foreclose a conviction under § 924(c)(1).  *United States v. Hopkins*, 310 F.3d 145, 153 (4th Cir. 2002); *United States v. Frayer*, 9 F.3d 1367, 1372 (8th Cir. 1993); *United States v. Ruiz*, 986 F.2d 905, 911 (5th Cir. 1993); *United States v. Hill*, 971 F.2d 1461, 1464 (10th Cir. 1992) (*en banc*).  Since a defendant need not be charged with the underlying substantive crime of violence to sustain a Section 924(c) charge, there is also no requirement that the substantive crime be charged to support a Section 924(o) conspiracy charge.  For each of these reasons, their attack on the validity of Counts 2 and 3, therefore, fails.

Defendants' attacks on the sufficiency of Counts 4 and 5 similarly fails.  Counts 4 and 5 charge Lecron and Armstrong, respectively, with possession of firearms in furtherance of the crime of violence as set forth in Count 1, that is a conspiracy to violate either Sections 844(d) or 844(i).  Counts 4 and 5 track the language of the underlying statute, contain the elements of the offense, provide sufficient notice to defend against the charges, and would enable defendants to raise a double jeopardy defense if they were later prosecuted.  As such, Counts 4 and 5 are facially valid.  *See Hamling*, 418 U.S. at 117.

The substance of Defendants' attack on Counts 4 and 5 is not that the indictment is defective, but rather, that a Section 844(n) conspiracy cannot qualify as a crime of violence predicate offense.  As set forth below, their position is incorrect for multiple, independent reasons, all of which require this Court to deny Defendants' motions.

B.     LAW REGARDING SECTION 924(C)

Under 18 U.S.C. § 924(c), "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a

firearm,. . . .," is guilty of an offense.  For purposes of Section 924(c), a "crime of violence" is a felony that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*See* 18 U.S.C. § 924(c)(3).  Subsection A is commonly referred to as the "force clause" or "elements clause," while part B is referred to as the "residual clause."  *See, e.g.*, *United States v. Tibbs*, 685 F. App'x 456, 465 (6th Cir. 2017).  On appeal, the Sixth Circuit applies the categorical approach to determine whether the underlying offense met the definition of a "crime of violence."  *United States v. Rafidi*, 829 F.3d 437, 444 (6th Cir. 2016).[4]

Defendants incorrectly claim that the crime of violence predicate offense listed in Counts 4 and 5 is not a crime of violence under Section 924(c)(3) because it is a conspiracy, rather than a substantive offense.  This claim is contrary to established Sixth Circuit precedent.  In fact, numerous Sixth Circuit cases hold that conspiracies to commit crimes of violence can qualify as predicates under Section 924(c)(3)(A) and (B).  Defendants further ignore a recent Sixth Circuit case finding that Section 924(c)(3)(B) is not unconstitutionally vague.  See *United States v. Taylor*, 814 F.3d 340, 379 (6th Cir. 2016).  Based on a proper reading of Sixth Circuit case law, Counts 4 and 5 properly allege that Lecron and Armstrong possessed firearms in furtherance of a crime of violence.

---

[4]     As further described below, the government believes that, in the context of a Section 924(c) violation that has not yet been tried, the issue of whether an offense involved a substantial risk of the use of physical force to satisfy the Section 924(c)(3)(B) residual clause raises a mixed question of fact and law that can be determined by a jury based on an evaluation of the underlying conduct, thereby obviating the need for a categorical analysis.

C.    VIOLATIONS OF SECTION 844(D) AND 844(I) ARE CRIMES OF VIOLENCE

In Counts 4 and 5, the indictment alleges that Defendants' underlying crime of violence for the Section 924(c) counts was a conspiracy to violate either 18 U.S.C. § 844(d) or § 844(i). Defendants' motions do not challenge that both of these crimes, substantively, qualify as "crimes of violence" under Section 924(c)(3)(A)'s elements clause.  The language of those statutes confirm that they qualify.

Title 18, Section 844(d), United States Code consists of the following elements:

(1) Transportation or receipt in interstate commerce,

(2) of any explosive,

(3) with knowledge or intent that it will be used to kill, injure or intimidate any individual.

On its face, § 844(d)'s requirement of knowledge or intent that the explosive will be "used to kill, injure or intimidate any individual," necessarily contemplates the use of physical force[5] against person or property that is contemplated by § 924(c)(3)(A).  As such, it qualifies as an elements-clause predicate offense.

Title 18, Section 844(i), United States Code, consists of the following elements:

(1) Malicious damage or destruction, or attempt of the same;

(2) by means of fire or explosive;

(3) to any building, vehicle, or other real or personal property.

---

[5]    Physical force means "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133 (2010).  Any force that is sufficient to overcome a victim's resistance is sufficient to meet this standard.  *United States v. Stokeling*, 139 S. Ct. 544 (2019).

Similar to § 844(d), § 844(i)'s requirement of damage or destruction by means of fire or explosive, on its face contemplates the use of physical force contemplated by § 924(c)(3)(A). Thus, it too plainly qualifies.

Moreover, courts have held and tacitly recognized both 18 U.S.C. § 844(d) and § 844(i) to be "crimes of violence."  *See United States v. Oakes*, No. 3:16-cr-00196, 2018 WL 2388562 (M.D. Tenn., May 25, 2018) (holding that 18 U.S.C. § 844(i) is a "crime of violence" under either Section 924(c)'s elements clause or residual clause); *see also United States v. Holdridge*, 30 F.3d 134 (6th Cir. 1994) (holding that the imposition of consecutive sentences under § 844(i) and § 924(c) does not violate the Double Jeopardy Clause); *accord*, *United States v. Strickland*, 261 F.3d 1271 (6th Cir. 2001), *United States v. Kirkpatrick*, 172 F.3d 50 (6th Cir. 1998), *United States v. Smith*, 502 F.3d 680, 691 (7th Cir. 2007); *United States v. Nguyen*, 117 F.3d 796, 797 (5th Cir. 1997), *United States v. Hammond*, F. App'x (4th Cir. 1997), *United States. v. Salameh*, 261 F.3d 271 (2nd Cir. 2001).

Defendants do not appear to dispute that a violation of either § 844(d) or § 844(i) constitute a crimes of violence under the elements clause of § 924(c)(3)(A).  Instead, their argument rests on the claim that conspiracies cannot qualify.  The Sixth Circuit disagrees with their position.

### D.    CONSPIRACIES ARE "CRIMES OF VIOLENCE" UNDER THE FORCE CLAUSE

Defendants' argument that a Conspiracy under 18 U.S.C. § 844(n), as alleged in Count One, is not a "crime of violence," such that it cannot serve as a predicate for a charge under 18 U.S.C. § 924(c) is contrary to Sixth Circuit precedent, which this Court must follow. Defendants cite multiple cases from other circuit courts that hold that conspiracies cannot be "crimes of violence."  These out-of-circuit cases are neither persuasive, nor binding in this

Circuit, nor on this Court.  Defendants fail to cite a single case from the Sixth Circuit to support the argument they advance.  Rather, Defendants ask this Court to disregard Sixth Circuit precedent.  This Court should decline the invitation.

The Sixth Circuit has held that conspiracies can in fact constitute "crimes of violence," so as to serve as predicates for convictions under Section 924(c).  In *United States v. Johnson*, 726 F.App'x 393, 407-08 (6th Cir. 2018), the Sixth Circuit rejected a defendant's claim that his RICO conspiracy conviction was not a crime of violence under Section 924(c)(3)(A)'s force clause.  Since the underlying racketeering activity that was part of the RICO conspiracy required the use of force, the Sixth Circuit found that the RICO conspiracy also qualified under the force clause.

Similarly, in *United States v. Vichitvongsa*, 819 F.3d 260 (6th Cir. 2016), the Sixth Circuit affirmed multiple Section 924(c) convictions where the underlying crimes were Hobbs Act robbery conspiracies and conspiracies to distribute controlled substances.  While the *Vichitvongsa* court reversed some Section 924(c) counts— because they were not based on separate instances of use or carrying of a firearm—the Section 924(c) convictions were still affirmed, where the underlying crimes of violence alleged were conspiracies.

District courts within the Sixth Circuit have recognized the same.  In *United States v. Graham*, 2018 WL 339902 (E.D. Mich Jan. 9, 2018), for instance, a district court recognized that the Sixth Circuit impliedly approved of a racketeering conspiracy serving as the predicate "crime of violence" for a Section 924(c) charge.  The court's decision in *Graham* was based on an unpublished Sixth Circuit case, *United States v. Nicholson*, 716 F. App'x 400 (6th Cir. 2017), which also affirmed Section 924(c) convictions based on racketeering conspiracies.  Several other Sixth Circuit cases, similarly, have affirmed Section 924(c) convictions where the

underlying crime of violence was identified as a conspiracy, rather than a substantive crime. *See, e.g., United States v. Cole*, 526 F.App'x 638 (6th Cir. 2013) (upholding Section 924(c) convictions based on one conspiracy to distribute drug crime and one possession with intent to distribute drug crime); *U.S. v. Graham*, 275 F.3d 490 (6th Cir. 2001) (upholding a Section 924(c) conviction predicated upon a Section 371 conspiracy to commit offenses against the United States, including violations of 18 U.S.C. § 922(o) (Possessing a machinegun), § 1114 (Attempt or Killing of an Officer or Employee of the United States), § 115(a)(1)(B) (Influencing, impeding, or retaliating against a Federal official by threatening or injuring a family member), § 111 (Assaulting, resisting or impeding certain officers or employees), and § 844(i) (Malicious damage or destruction by means of fire or explosive).

In short, there is established precedent in this Circuit recognizing that conspiracies to commit violent crimes in fact constitute appropriate predicates for a Section 924(c) charge. Defendants' argument to the contrary finds no precedent in this Circuit.

E.    CONSPIRACIES ARE ALSO CRIMES OF VIOLENCE UNDER THE RESIDUAL CLAUSE

Defendants' motions also claim that the residual clause in Section 924(c)(3)(B) is unconstitutionally vague. This position is an improper attempt to extend the Supreme Court's ruling in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). In *Dimaya*, the Supreme Court held that 18 U.S.C. 16(b)'s residual clause was unconstitutionally vague. It did not hold that the residual clause in Section 924(c)(3)(B) was. *Dimaya* did not address nor invalidate Section 924(c)(3)(B). Indeed, in his dissent, Chief Justice Roberts expressly noted that the Court was not yet deciding the Section 924(c)(3)(B) question. *See Dimaya*, 138 S. Ct. at 1241. In fact, the Supreme Court recently granted the government's petition for *certiorari* on this very issue, demonstrating that

the Court has yet to decide it.  *See United States v. Davis*, __ U.S. __139, S. Ct. 782 (2019) (raising the question whether 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague).

Accordingly, until the Supreme Court rules on this issue, the law in the Sixth Circuit remains that the residual clause in Section 924(c)(3)(B) passes constitutional muster.  The Sixth Circuit has already rejected challenges to the constitutionality of § 924(c)(3)(B).  In *United States v. Taylor*, 814 F.3d 340 (6th Cir. 2016), the Sixth Circuit held that *Johnson* did not render § 924(c)(3)(B) unconstitutionally vague.  *Id.* at 379.  And in *Shuti v. Lynch*, 828 F.3d 440 (6th Cir. 2016), the Sixth Circuit expressly distinguished the § 924(c)(3)(B) residual clause from the ACCA and 18 U.S.C. § 16(b) residual clauses because these latter provisions "require a categorical approach to stale predicate convictions," while "18 U.S.C. § 924(c) is a criminal offense that requires an ultimate determination of guilt beyond a reasonable doubt—by a jury, in the same proceeding."  *Id.* at 449.  As a result, the Sixth Circuit read its earlier decision in *Taylor* "as applying *Johnson*'s real-world conduct exception to uphold the constitutionality of § 924(c)(3)(B)."  *Id.* at 450.   This Court is bound by this precedent.

      F.      SECTION 924(C)(3)(B) IS NOT UNCONSTITUTIONALLY VAGUE DESPITE *DIMAYA* BECAUSE THE SECTION 924(C) RESIDUAL CLAUSE REQUIRES A CASE-SPECIFIC APPROACH.

Defendants assume that the Supreme Court will declare Section 924(c)(3)(B) unconstitutionally vague because its language is virtually the same as Section 16(b).  This argument assumes that the categorical approach must apply to Section 924(c)(3)(B).  Although the government has previously advocated for a categorical approach to determine whether an offense constitutes a "crime of violence" under § 924(c)(3)(B), nothing in the statute or decisions of the Supreme Court requires such an approach.  And indeed, the Sixth Circuit in *Shuti* recognized that the Section 924(c) residual clause is different.  Based on this and guidance

13

provided in recent Supreme Court precedent, the government now believes that the residual clause requires a case-specific approach in the Section 924(c) context.

More specifically, Section 924(c)(3)(B)'s subsection-specific crime of violence definition is applicable only to the conduct for which the Defendants are currently being prosecuted, not to any conduct for which the Defendants may have been convicted in the past.  As the Sixth Circuit recognized in *Shuti, supra*, it can naturally be read as inviting a case-specific determination as to whether the defendant's current conduct—not the hypothetical conduct of an "ordinary case"—satisfies the substantial-risk requirement of 18 U.S.C. § 924(c)(3)(B).  And, so construed, § 924(c)(3)(B) does not implicate the constitutional infirmity with the ordinary-case approach that was identified in *Johnson* and reinforced in *Dimaya*.  Indeed, the Supreme Court in those cases "'d[id] not doubt'" that such a case-specific approach, involving a jury finding beyond a reasonable doubt about the "'real-world conduct'" proved in the case, would be constitutional. *Dimaya*, 138 S. Ct. at 1215 (quoting *Johnson*, 135 S. Ct. at 2561).

1.  The Supreme Court has never required a categorical approach for Section 924(c)(3)(B).

The Supreme Court has never required that courts follow a categorical approach in the context of Section 924(c)(3)(B).  In fact, the Supreme Court did not even hold in *Dimaya* that language like Section 16(b)'s invariably mandates a categorical approach under which a court must disregard real-world conduct in favor of attempting to identify the "ordinary case" of a particular crime.  A plurality of the Court viewed Section 16(b)—which often, as in the INA context presented in *Dimaya* itself, is applied to classify a prior conviction entered by another court in otherwise unrelated proceedings—as "[b]est read" to require such an approach.  138 S. Ct. at 1217 (opinion of Kagan, J.); *see id.* at 1216-18.  The plurality observed, however, that the government had not asked the Court to abandon the categorical approach in the Section 16(b)

14

context. *Id.* at 1217. Justice Gorsuch, concurring in part and concurring in the judgment, similarly stressed that the government had conceded the categorical-approach issue in *Dimaya* and expressed his willingness to consider "in another case" whether "precedent and the proper reading of language" like Section 16(b)'s in fact requires a categorical approach. *Id.* at 1233 (opinion of Gorsuch, J.). And Justice Thomas, joined by Justices Kennedy and Alito, filed a dissenting opinion advocating that the Court "should abandon [the categorical] approach" entirely under Section 16(b). *Id.* at 1242 (opinion of Thomas, J.).

Accordingly, *Dimaya* did not include any holding by a majority of the Court that Section 16(b) requires a categorical approach. More to the point, it certainly leaves open the same question for Section 924(c)(3)(B). Indeed, the Supreme Court is considering exactly that question, *i.e.*, whether the categorical approach applies to Section 924(c)(3)(B), later this term in *Davis.* As discussed below, courts should construe Section 924(c)(3)(B) to require a case-specific approach that considers the defendant's own conduct, rather than the "ordinary case" of his crime. Such a case-specific approach makes particular sense in the context of Section 924(c), which—unlike Section 16(b) or the ACCA—employs the term "crime of violence" exclusively to describe the circumstances of the conduct for which the defendant is *presently* charged.

>    2.    Section 924(c)(3)(B) Should Be Interpreted To Require A Case-Specific Approach

Conviction under Section 924(c) requires a jury to find (or the defendant to admit through a plea) that the defendant "committed all the acts necessary to be subject to punishment for" a qualifying federal crime and that his commission of that crime had a sufficient nexus to his use, carrying, or possession of a firearm. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999). The jury's role thus inherently requires consideration of, and determinations about, the unlawful course of conduct charged as a "crime of violence" under Section 924(c)(3)(B). Unlike

in the context of a recidivist sentencing enhancement (like the ACCA) or the classification of a

prior offense for purposes of determining an alien's removability (like Section 16(b) in *Dimaya*),

Section 924(c)(3)(B)'s definition of a "crime of violence" is never applied to a prior conviction,

the specific facts of which may not be before the court.  Instead, a prosecution under Section

924(c) will by necessity involve a "developed factual record" about the underlying crime.

*United States v. St. Hubert*, 883 F.3d 1319, 1335 (11th Cir. 2018).  That feature of Section 924(c)

cases enables the jury to apply the "crime of violence" definition in Section 924(c)(3)(B) in a

case-specific manner that considers a defendant's own conduct.  Construing the statute to

incorporate such an approach "makes good sense," *id.* at 1334, and is consistent with its text,

context, and interpretation by the Supreme Court.

    In order for an "offense" to be a crime of violence under Section 924(c)(3)(B), it must,

"by its nature, involve[]" a substantial risk that physical force "may be used in the course of

committing the offense."  18 U.S.C. § 924(c)(3)(B).  That language comports with a case-

specific approach that relies on the conduct at issue in a particular prosecution.  A jury can

readily determine whether a defendant's underlying "offense . . . by its nature, involves" the use

of physical force in the course of its commission without needing to consider what the "ordinary

case" of that offense might be.  The term "nature" refers to "the basic or inherent features,

character, or qualities of something."  Oxford Dictionary of English 1183 (3d ed. 2010).  That

"something" can be the defendant's own crime, rather than a stylized "ordinary case."

    The statutory and jurisprudential context of Section 924(c)(3)(B) provides additional

support for a case-specific approach.  The position and function of Section 924(c)(3)(B) suggest

a statutory inquiry that goes beyond the legal definition of an offense.  As noted above, Section

924(c)(3)(B) operates in tandem with Section 924(c)(3)(A), which defines a "crime of violence"

to include any federal offense that "has as an element the use, attempted use, or threatened use of physical force."  By focusing solely on the "elements" of the crime, Section 924(c)(3)(A) requires an "elements-based categorical approach" by a court, rather than consideration of "the specific means by which the defendant committed the crime" by a jury.  *United States v. Evans*, 848 F.3d 242, 245-46 (4th Cir. 2017); *see, e.g.*, *St. Hubert*, 883 F.3d at 1331; *cf. Mathis*, 136 S. Ct. at 2248 (explaining that the inquiry under a similarly worded ACCA provision "focus[es] solely on whether the elements of the crime of conviction sufficiently match" the statutory definition).  Section 924(c)(3)(B), however, is necessarily understood to cover offenses *other* than those covered by Section 924(c)(3)(A).  *See Corley v. United States*, 556 U.S. 303, 314 (2009) (explaining the "basic interpretive canon[]" that different provisions of a statute should be interpreted to mean different things).  And because Section 924(c)(3)(A) already covers all offenses that have the legal element of physical force, Section 924(c)(3)(B)'s substantial-risk-of-force standard naturally invites an inquiry that goes outside the four corners of an offense's legal definition.

The customary way to apply a "qualitative standard such as 'substantial risk'" is to do so by reference "to real-world conduct," not platonic legal constructs.  *Johnson*, 135 S. Ct. at 2561.  "[D]ozens of federal and state criminal laws" use such terms, and "almost all" of them "require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*."  *Ibid.*; see Gov't Supp. Br. Appx. A-B, *Johnson*, *supra* (No. 13-7120) (listing examples).   An "ordinary case" categorical approach is an anomaly, not the norm, and Section 924(c)(3)(B)'s "substantial risk" inquiry can thus readily be understood as a mixed question of law and fact that a jury would determine.  *Gaudin*, 515 U.S. at 509-10; *see id.* at 513, 522-23 (noting that, with the exception of "pure questions of law," "[t]he Constitution gives a criminal

17

defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged") (emphasis omitted).  Juries have resolved mixed questions of law and fact in light of the record of the case before them since our country's founding, *see id.* at 511-15, and are fully capable of doing so in the context of Section 924(c)(3)(B).

The reasons for applying the categorical approach to other statutes do not apply to Section 924(c)(3)(B).   The Supreme Court has required an "ordinary case" categorical approach only in the context of statutes that are applied to classify prior convictions.  The reasons for applying the categorical approach in that context do not extend to Section 924(c)(3)(B), which instead applies only to the conduct giving rise to the current prosecution.

The Supreme Court first endorsed a "categorical approach" interpretation of a federal statute in *Taylor v. United States*, *supra*.  *See St. Hubert*, 883 F.3d at 1335.  The Court in that case considered whether the ACCA's reference to a prior conviction for "burglary" meant burglary as defined by state law or instead referred to "some uniform definition."  *Taylor*, 495 U.S. at 580.  The Court determined that Congress had intended to refer to burglary in a uniform "generic" sense, *id.* at 598, and then addressed how the government would prove that a defendant's prior conviction was for "generic burglary," *id.* at 599-602.  *Taylor* adopted the categorical approach for reasons that were largely specific to the ACCA's focus on prior convictions and have no direct analogue in the context of Section 924(c)(3)(B).  *See* 495 U.S. at 600-02; *see, e.g.*, *id.* at 600 (reasoning that the ACCA required a categorical approach because that statute "refers to 'a person who . . . has three prior *convictions*' for—not a person who has committed—three previous violent felonies or drug offenses") (emphasis added).  At the "heart of the decision" was a limitation on the amount of evidence about the circumstances underlying

prior convictions that the parties would be permitted to introduce for the first time at sentencing. *Shepard v. United States*, 544 U.S. 13, 23 (2005); *see Taylor*, 495 U.S. at 601 (explaining why "the practical difficulties and potential unfairness of a factual approach are daunting" in that context).  Prior convictions "that are counted for an ACCA enhancement are often adjudicated by different courts in proceedings that occurred long before the defendant's sentencing."  *United States v. Robinson*, 844 F.3d 137, 142 (3d Cir. 2016).

As explained in later cases, judicial factfinding involving prior convictions during sentencing also presents concerns about potential violations of the Sixth Amendment.  A judge's resolution of the disputed facts underlying a defendant's prior conviction at sentencing would be "too much like" the kind of factfinding that the Sixth Amendment requires the jury to conduct. *Shepard*, 544 U.S. at 25 (plurality opinion); *see Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt").

For those practical and constitutional reasons, "[t]he categorical approach serves a purpose when evaluating prior state convictions committed long ago in fifty state jurisdictions with divergent laws."  *St. Hubert*, 883 F.3d at 1336.  But it does not serve that purpose in the context of Section 924(c)(3)(B), where a jury has the factual record of the underlying offense before it and must determine whether the defendant committed that offense before determining whether the defendant's use, carrying, or possession of a gun violated Section 924(c).  Unlike in the context of the classification of *prior* crimes, no practical or constitutional reason exists that would require courts to "analyz[e] a § 924(c) predicate offense in a vacuum."  *Robinson*, 844 F.3d at 143.  In the trial context, "[t]he jury's determination of the facts of the charged

offenses unmistakably shed[s] light on whether the predicate offense" qualifies as a crime of violence. *Id.* at 141. In that circumstance, "[t]he remedial effect of the 'categorical' approach is not necessary." *Ibid.*

Nor does an underlying-conduct approach give rise to any of the Sixth Amendment concerns that animated the Supreme Court's adoption of the categorical approach. "[A]ny fact that increases the penalty for a crime" under Section 924(c) *is* "submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Accordingly, the defendant "suffers no prejudice because the court is not finding any new facts which are not of record in the case before it." *Robinson*, 844 F.3d at 143.

3.    Use of Underlying Conduct Approach in This Case.

Under an underlying-conduct approach, whether the Defendants' commission of a particular federal offense is a "crime of violence" becomes a mixed question of fact and law. The Fifth and Sixth Amendments require that a jury resolve mixed questions of fact and law by, in the context of Section 924(c)(3)(B), examining the circumstances of the defendants' predicate crime to determine whether the offense involved a substantial risk of the use of physical force. Cf. *United States v. Gaudin*, 515 U.S. 506, 509-10, 522-23 (1995) (holding that the jury must determine whether a defendant's false statement was "material" under 18 U.S.C. § 1001 stating, "The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged.")

Requiring a jury to make the risk determination coheres with how juries have long resolved mixed questions of fact and law. *See Gaudin*, 515 U.S. at 511-15 (detailing the historical record dating back to the founding). To sustain a conviction under Section 924(c)(3)(B), the jury must find four distinct elements: (i) the defendant "committed all the acts necessary to be subject to punishment" for a particular federal offense; (ii) the federal offense was "a crime of violence"

(iii) the defendant possessed, carried, or used a firearm; and (iv) any use or carrying of the firearm was during and in relation to the federal offense, or any possession of the firearm was in furtherance of the federal offense.  *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999); 18 U.S.C. § 924(c)(1)(A).  Regardless of whether the categorical approach applies, this Court would instruct the jury in the same manner as it always has on elements (i), (iii), and (iv).  With respect to element (ii), under an underlying-conduct approach, this Court would instruct the jury that it must find beyond a reasonable doubt that the predicate federal offense, that is, conspiracy under § 844(n), (the Defendants' respective commission of which the jury must already have found in order to satisfy element (i)) "involve[d] a substantial risk that physical force against the person or property of another may [have] be[en] used in the course of committing the offense," 18 U.S.C. § 924(c)(3)(B).  A proposed model jury instruction is set forth in an Appendix to this brief in opposition.

This Court could aid the jury in its determination of that issue by defining the operative terms within the definition of crime of violence and providing other direction to ensure that Section 924(c)(3)(B) is applied in a manner consistent with Congress's intent.  For example, this Court could instruct the jury that a risk is "substantial" if it is "[o]f ample or considerable amount," *Life Technologies Corp. v. Promega Corp.*, __ U.S. __, 137 S. Ct. 734, 740 (2017) (internal quotation marks omitted), as opposed to unlikely, small, or negligible.  It could define "physical force" to mean "'force capable of causing physical pain or injury'" to a person, *Dimaya*, 138 S. Ct. at 1220 (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)), or "injury to property," *United States v. Hill*, No. 14-3872-cr, 2018 WL 2122417, at *5 (2d Cir. May 9, 2018).  It could also instruct the jurors that they may consider all of the evidence in the case as well as their common

21

sense in determining whether the predicate offense involved a substantial risk that physical force would be used.

## III.    CONCLUSION

For the foregoing reasons, this Court should deny Defendants' requests to dismiss Counts Two, Three, Four, and Five of the Indictment.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:    /s/ Michelle M. Baeppler
Michelle M. Baeppler (OH: 0065378)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3995
(216) 685-2378 (facsimile)
Michelle.Baeppler@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of March 2019 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ Michelle M. Baeppler
Michelle M. Baeppler
Assistant U.S. Attorney

**APPENDIX: PROPOSED JURY INSTRUCTION FOR SECTION 924(c)(3)(B)**

*Model instruction if the district court finds that the predicate offense satisfies the elements clause, but Government desires to also have jury consider risk-clause finding:*

Count __ of the indictment charges the defendant with [using; carrying] a firearm during and in relation to a crime of violence.  In order for you to find the defendant guilty of this charge, the government must prove both of the following elements beyond a reasonable doubt:

1. The defendant committed the crime of [name the predicate crime of violence]; and

2. The defendant knowingly [used; carried] a firearm during and in relation to such crime.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt, then you should find the defendant not guilty.

If you find the defendant guilty on that charge, you should next determine whether the government has proven beyond a reasonable doubt that the defendant's conduct associated with the [name specific crime] involved a substantial risk that physical force may be used against the person or property of another.  If you find from your consideration of all the evidence that the government proved that the defendant's conduct involved a substantial risk that physical force may be used, please check yes.  If, on the other hand, the government did not prove that the defendant's conduct involved a substantial risk that physical force may be used against the person or property of another, please check no.

*Model instruction if Government wishes to forgo reliance on the elements clause:*

Count ___ of the indictment charges the defendant with [using; carrying] a firearm during and in relation to a crime of violence.  In order for you to find the defendant guilty of this charge, the government must prove the following elements beyond a reasonable doubt:

1. The defendant committed the crime of [name the specific crime of violence];
    1.

2. The defendant knowingly [used; carried] a firearm during and in relation to a such crime; and

3. The defendant's conduct involved a substantial risk that physical force may be used against the person or property of another.

If you find from your consideration of all the evidence that the government has proved each of these elements beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that the government has failed to prove any one of these elements beyond a reasonable doubt, then you should find the defendant not guilty.