s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

| | | |
|---|---|---|
| United States of America, | : | Case No. 3:19-CR-4-2 |
| Plaintiff, | : | HON. JAMES G. CARR |
| vs. | : | **DEFENDANT'S MOTION TO SEVER COUNT SEVEN** |
| Vincent Armstrong, | : | |
| Defendant. | : | |

s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s-s

Defendant Vincent Armstrong respectfully moves the Court for an order granting him relief from improper and prejudicial joinder.  Specifically, defendant Armstrong seeks an order severing Count Seven of the Indictment (Doc. No. 9) from the other remaining counts, pursuant to FED. R. CRIM. P. 8 and 14.

A memorandum in support of this motion follows.

EASTMAN & SMITH LTD.

 /s/ Adam S. Nightingale
Adam S. Nightingale (0079095)
One SeaGate, 24th Floor
P.O. Box 10032
Toledo, Ohio  43699-0032
Telephone:   (419) 241-6000
Fax:             (419) 247-1777
E-Mail:        asnightingale@eastmansmith.com

Attorney for Defendant Vincent Armstrong

## MEMORANDUM IN SUPPORT

### INTRODUCTION

The Indictment in this case charges seven counts against defendants Elizabeth Lecron and Vincent Armstrong.  Six of these counts (Counts One through Six) relate to the same course of conduct: an alleged agreement between the defendants to commit a violent attack at a bar in Toledo, Ohio, and to use an explosive and firearms to commit that attack.  Count Seven, however, charges defendant Lecron with a wholly unrelated crime: purchasing black powder to assist environmental activists in attacking a pipeline in Georgia.  Count Seven is improperly joined pursuant to Rule 8(b), because it does not arise out of the same act or transaction charged in Counts One through Six.  And further, Count Seven should be severed pursuant to Rule 14, because the joinder of Count Seven would result in significant trial prejudice to Mr. Armstrong.

### BACKGROUND[1]

On January 3, 2019, the Grand Jury returned an Indictment in this case which included the following charges against defendants Elizabeth Lecron and Vincent Armstrong:

- **Count One:**  Conspiracy to Transport or Receive an Explosive with Intent to Kill, Injure, or Intimidate Any Individual, and Maliciously Damage or Destroy by Fire or Explosive – 18 U.S.C. § 844(n) (against Lecron and Armstrong)

- **Count Two:** Conspiracy to Use a Destructive Device During and In Relation to a Crime of Violence – 18 U.S.C. § 924(o) (against Lecron and Armstrong)

- **Count Three:**  Conspiracy to Use Firearms During and In Relation to a Crime of Violence – 18 U.S.C. § 924(o) (against Lecron and Armstrong)

- **Count Four:**  Possession of a Firearm in Furtherance of a Crime of Violence – 18 U.S.C. § 924(c) (against Lecron only)

---

[1] The background information provided in this motion has been obtained from reports and filings by the Government in this case.  Mr. Armstrong restates this background information for purposes of this motion only, and reserves his right to contest this information at a later date.

- **Count Five:** Possession of Firearms in Furtherance of a Crime of Violence – 18 U.S.C. § 924(c) (against Armstrong only)

- **Count Six:** Making False Statements – 18 U.S.C. § 1001 (against Armstrong only)

- **Count Seven:** Transporting Explosives in Interstate Commerce – 18 U.S.C. § 844(d) (against Lecron only)

(Doc. No. 9).  With the exception of Count Six, the bare-bones Indictment is devoid of any meaningful factual allegations.  However, the Government's brief in opposition to Defendants' motions to dismiss (Doc. No. 36) sets forth the basic theory of the Government's case.

The Government contends that in the summer of 2018, Ms. Lecron and Mr. Armstrong agreed to plan a violent attack.  (Doc. No. 36, p. 2).  This "plan" allegedly "morphed" over the course of several months:  first, the Defendants allegedly agreed to make a pipe bomb (which never occurred); then, later, the pair allegedly agreed to commit "a mass murder at a local bar in Toledo" (which never occurred).  *Id.* at p. 3.  As a result of this "plan," Defendants were charged in Counts One through Five of the Indictment, and Mr. Armstrong was charged in Count Six with making false statements.

Once the Government received information about the alleged "plan" referenced above, the FBI's Joint Terrorism Task Force ("JTTF") used a confidential human source ("the CHS") to befriend Ms. Lecron.  (Doc. No. 1-1, Affidavit in Support of Lecron Complaint, ¶ 39).  The CHS met with Ms. Lecron on several occasions, and eventually introduced her to two undercover agents.  *Id.* at ¶¶ 40-44.  The undercover agents, posing as environmental activists/anarchists, discussed conducting a bombing attack with Ms. Lecron.  *Id.* at ¶¶ 46-47.  They discussed making a political statement, and discussed potential targets, such as a slaughter house or pig farm, or the manufacturing plant where Ms. Lecron worked.  *Id.*  A few months later, in December 2018, the CHS told Ms. Lecron that he and the undercover agents were planning to bomb a pipeline in the southern U.S.  *Id.* at ¶ 50.  He described

3

the materials he would need, and, according to the CHS, Ms. Lecron agreed to help. *Id.* Four days later, according to the CHS, Ms. Lecron purchased two pounds of black powder, and 665 screws, for use in the alleged pipeline bombing. *Id.* at ¶¶ 51-53.

The Government described the second plot as follows in its prior briefing:

> While Lecron and Armstrong were planning to use a pipe bomb and firearms at a local Toledo bar, *Lecron was also assisting in another plot* – she agreed to buy and did buy explosives for an attack that she believed was going to occur on a pipeline in Georgia. Lecron purchased explosive powder at a Toledo area shop.
>
> * * *
>
> Count 7 charges Lecron with purchasing black powder in an effort to bomb a pipeline in the State of Georgia, in violation of 18 U.S.C. § 844(d).

(Doc. No. 36, p. 3, 4) (emphasis added). There can be no question, the Count Seven "plot" is wholly unrelated to the "plan" charged in Counts One through Six.

## LAW AND ARGUMENT

Mr. Armstrong is entitled to severance of Count Seven. Severance is mandatory pursuant to FED. R. CRIM. P. 8, because Count Seven is has been misjoined. Further, permissive severance is appropriate under FED. R. CRIM. P. 14, because the inclusion of Count Seven at trial would substantially prejudice Mr. Armstrong.

### 1. Count Seven is Misjoined - FED. R. CRIM. P. 8

Rule 8 requires the Court to examine the allegations of the indictment and scrutinize whether all offenses and defendants have been properly joined. The rule provides as follows:

> **(a) Joinder of Offenses.** The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

4

> **(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

FED. R. CRIM. P. 8.   While Rule 8(a) nominally applies to joinder of offenses, "[t]raditionally, courts have held that Rule 8(a) applies only to a prosecution of a single defendant, and that Rule 8(b) applies exclusively whenever multiple defendants are involved …."  *United States v. Frost*, 125 F.3d 346, 389 (6th Cir. 1997) (citing 1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE: FEDERAL RULES OF CRIMINAL PROCEDURE § 143 p. 479, § 144 p. 494 (2d ed.1982)).   Accordingly, Rule 8(b) controls whether Count Seven has been appropriately joined here.

To be sure, Rule 8(b) should be construed in favor of joinder.  *See United States v. Franks*, 511 F.2d 25, 28 (6th Cir.), cert. denied, 422 U.S. 1042, 95 S.Ct. 2654, 45 L.Ed.2d 693 (1975).  However, it is also true that failure to meet the requirements of this rule constitutes misjoinder as a matter of law. *United States v. Hatcher*, 680 F.2d 438, 441 (6th Cir.1982).  Indeed, if an offense is misjoined under Rule 8(b), the Court must sever the offense:

> If multiple defendants are improperly joined under Rule 8(b) because they are charged with offenses that are unrelated, then they are to be considered as prejudiced by that fact and the trial judge has no discretion on the question of severance.  *Severance in such a case is mandatory.*

*Id.* (citations omitted) (emphasis added).  In deciding whether joinder is proper, the Court must review the allegations on the face of the indictment.  *United States v. Locklear*, 631 F.3d 364, 368 (6th Cir. 2011) (quoting *United States v. Chavis*, 296 F.3d 450, 456 (6th Cir. 2002)).

Under Rule 8(b), the joinder of multiple defendants is only proper "if each of the counts of the indictment arises out of the same act or transaction or series of acts or transactions, even if all counts of the indictment include a common defendant."  *United States v. Lloyd*, 10 F.3d 1197, 1215 (6th Cir.

1993) (quoting *Hatcher*, 680 F.2d at 441).    Joinder is not permitted when otherwise-connected individuals "commit separate acts which involve them in separate offenses with no common aim." *United States v. Carrozza*, 728 F.Supp. 266, 270 (S.D.N.Y. 1990), *aff'd*, 956 F.2d 1160 (2d Cir.1992). Here, Count Seven does not arise out of "same act or transaction, or in the same series of acts or transactions" as Counts One through Six, and thus severance of Count Seven is mandatory.  FED. R. CRIM. P. 8(b).

For example, in *Hatcher*, supra., two defendants (Manetas and Hatcher) were charged in a six-count indictment.    Three counts jointly charged Manetas and Hatcher with heroin-distribution offenses (including conspiracy), while the remaining three counts charged Hatcher alone with separate cocaine-distribution offenses.  *Hatcher*, 680 F.2d at 440.  All six counts were tried during a joint trial of both defendants, and both defendants were convicted on all counts.  On appeal, the Sixth Circuit held that Hatcher's three individual cocaine-related offenses were misjoined with the joint heroin-related counts.    Although Hatcher and Manetas were alleged (and indeed convicted) of participating in a conspiracy to distribute heroin, the indictment alleged no connection between Manetas and the cocaine-related charges against Hatcher.   *Id*. at 441.  As such, joinder was improper, severance was mandatory, and the district court was reversed.

The same is true here.  Mr. Armstrong concedes that Counts One through Six allege conduct which is sufficiently related to satisfy Rule 8(b).  Count Seven, however, is completely unrelated.  The Indictment alleges no connection between Count Seven and the other counts.  Nor could it; the alleged "Georgia pipeline plot" involving Ms. Lecron had absolutely nothing to do with the alleged plot to attack a bar in Toledo: the alleged target was different (a pipeline in Georgia vs. a bar in Toledo); the alleged participants were different (Ms. Lecron and law enforcement agents vs. Ms. Lecron and Mr. Armstrong); the alleged motive was different (environmental activism vs. causing mass casualties); and the evidence required to prove the offenses will be different.  The Government may

6

contend that the "plots" are similar because they both allegedly involved the potential use of an explosive, but "[m]ere similarity of offenses does not demonstrate that those offenses arose out of a series of acts or transactions." *United States v. Tsanges*, 582 F. Supp. 237, 238 (S.D. Ohio 1984) (citing *United States v. Bledsoe*, 674 F.2d 647, 656 (8th Cir. 1982)). And again, "[n]either does the presence of a common defendant." *Id.* (citing *Hatcher*, 680 F.2d at 441).

Mr. Armstrong is cognizant of the concerns of judicial economy and efficiency implicated here, and understands that Rule 8 was designed to promote these considerations. However, "[a]lthough one of the goals of joinder is to promote judicial economy, a countervailing purpose of Rule 8(b) 'is to prevent the cumulation of prejudice [growing out of] charging several defendants with similar but unrelated offenses.'" *United States v. Weaver*, 905 F.2d 1466, 1477 (11th Cir. 1990) (citations omitted). Further, the fact that the alleged "Georgia pipeline plot" is completely unrelated to the alleged "Toledo bar plot" is significant, because "if the offenses arise out of separate and unrelated transactions, there is likely to be little saving in time and money in having a single trial." *United States v. Chavis*, 296 F.3d 450, 460 (6th Cir. 2002) (quoting 1A CHARLES ALAN WRIGHT, FEDERAL PRACTICE & PROCEDURE: CRIMINAL § 143, at 40 (3d ed. 1999)); see also *United States v. Halper*, 590 F.2d 422, 430 (2d Cir. 1978) (where there is no common factual basis for two offenses, the advantages of joinder "largely disappear"). Indeed, the only time likely saved by trying Count Seven with the other counts here "is the time spent selecting a jury, and perhaps the time spent examining character witnesses." *Halper*, 590 F.2d at 430.

The two alleged "plots" do not arise out of "the same act or transaction, or in the same series of acts or transactions," as required by Rule 8(b). FED. R. CRIM. P. 8(b); *Hatcher*, 680 F.2d at 441. More importantly, the Indictment contains no factual allegations from which the Court can conclude that Count Seven arises out of the same series of events as the rest of the Indictment. Accordingly, Count Seven is misjoined, and severance is required.

7

### 2. Joinder of Count Seven is Prejudicial to Mr. Armstrong – FED. R. CRIM. P. 14

In addition to severance under FED. R. CRIM. P. 8(b), Count Seven should be severed pursuant to FED. R. CRIM. P. 14.   Rule 14(a) provides for relief from prejudicial joinder as follows:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

FED. R. CRIM. P. 14(a).   Severance should be granted where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).   The decision to grant or deny a motion to sever is left to the discretion of the trial court. See *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002).

Importantly, when considering a motion under Rule 14(a), the Court is not limited to the face of the Indictment.  *See Weaver*, 905 F.2d R 1476-77 (citations omitted) ("The question of whether initial joinder is proper under Rule 8(b) is to be determined before trial by examination by the trial court of the allegations stated on the face of the indictment. However, whether joinder is improper based upon evidence proffered before or adduced during trial is governed by Rule 14.").

The case of *United States v. Reynolds*, 489 F.2d 4 (6th Cir. 1973), *cert. denied*, 416 U.S. 988, 94 S. Ct. 2395, 40 L.Ed.2d 766 (1974), is instructive on this issue.  There, defendants Reynolds and Brown were charged in a four-count indictment alleging violations of federal narcotics laws. The first two counts of the indictment charged Reynolds with possession and sale of heroin, while the latter two counts charged both Reynolds and Brown with possession and sale of narcotics after illegal importation.  Brown attempted to have the cases severed before trial, but his motion was denied. *Id.* at 6.  The evidence adduced at trial demonstrated that Brown had no connection to the offenses

8

charged in the first two counts of the indictment.  *Id.*  Both Reynolds and Brown were convicted on all counts.  *Id.*

On appeal, the Sixth Circuit reversed, finding that the trial court improperly denied Brown's motion to sever.  To start, the Court noted that "the Rules do not permit cumulation of prejudice by charging defendants with similar but unrelated offenses."  *Reynolds*, 489 F.2d at 6 (quoting *Cupo v. United States*, 359 F.2d 990, 993 (D.C. Cir. 1966)).  Importantly, the Sixth Circuit held that "[w]here multiple defendants are charged with offenses in no way connected, and are tried together, *they are prejudiced by that very fact*, and the trial judge has no discretion to deny relief."  *Id.* (emphasis added) (quoting *Ingram v. United States*, 272 F.2d 567, 570 (4th Cir. 1959)).  Although the Court found that Reynolds was not prejudiced (because he was charged in all four counts), the prejudice to Brown justified a reversal of Brown's convictions, and a remand to the District Court with orders for a new and separate trial.  *Id.*

Again, as discussed above, the conduct charged in Count Seven is in no way connected with alleged plan charged in Counts One through Six.  A joint trial of these separate "plots" would create a substantial risk of spillover prejudice to Mr. Armstrong.  This risk is especially high because of the similarity of the charges; indeed, they are "similar but unrelated offenses" in that both involve alleged plans to use explosives, but are otherwise unconnected.  *Reynolds*, 489 F.2d at 6 (quoting *Cupo v.* 359 F.2d at 993).  The risk of spillover prejudice is further heightened by fact Ms. Lecron and Mr. Armstrong were both in a romantic relationship and living together.  There is a substantial likelihood that the jury will not be able to separate evidence relating to Ms. Lecron's alleged purchase of explosives (for the alleged pipeline "plot") from the separately charged conspiracies to transport and use explosives (for the alleged Toledo "plan").  Indeed, much of the evidence relating to Count Seven would be irrelevant and inadmissible in a trial of Counts One through Six.

Count Seven is similar but unrelated to Counts One through Six, and as such, Mr. Armstrong would be "prejudiced by th[e] very fact" of its inclusion, and would be entitled to a reversal and a new, separate trial if convicted. *Reynolds*, 489 F.2d at 6. Accordingly, Count Seven should be severed from the rest of the Indictment, and should be tried separately.

## CONCLUSION

Count Seven is misjoined because it is wholly unrelated to the rest of the Indictment, and its inclusion at trial would significantly prejudice Mr. Armstrong. Accordingly, Count Seven should be severed and tried separately.

Respectfully submitted,

EASTMAN & SMITH LTD.

 /s/ Adam S. Nightingale
Adam S. Nightingale (0079095)
One SeaGate, 24th Floor
P.O. Box 10032
Toledo, Ohio  43699-0032
Telephone:    (419) 241-6000
Fax:              (419) 247-1777
E-Mail:         asnightingale@eastmansmith.com

Attorney for Defendant Vincent Armstrong

## PROOF OF SERVICE

This is to certify that a copy of the foregoing has been filed electronically this 30th day of April 2019. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Adam S. Nightingale
Attorney for Defendant Vincent Armstrong

4813334.1